**KATTEN MUCHIN ROSENMAN LLP**
Zia F. Modabber (SBN 137388)
  zia.modabber@kattenlaw.com
Tami Kameda Sims (SBN 245628)
  tami.sims@kattenlaw.com
Sara Karubian (SBN 266219)
  sara.karubian@kattenlaw.com
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone:  310.788.4400
Facsimile:  310.788.4471

**KINSELLA WEITZMAN ISER KUMP
& ALDISERT LLP**
Howard Weitzman (SBN 38723)
  hweitzman@kwikalaw.com
Jeremiah T. Reynolds (SBN 223554)
  jreynolds@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California  90401
Telephone:  310.566.9800
Facsimile:  310.566.9850

Attorneys for John Branca and John McClain,
Executors of the Estate of Michael J. Jackson,
Michael Jackson Company, LLC, MJJ
Productions, Inc. and Optimum Productions

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, CENTRAL DIVISION**

| | |
|---|---|
| JOHN BRANCA AND JOHN MCCLAIN, Executors of the Estate of Michael J. Jackson, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> HOWARD MANN, an individual, et al., <br><br> Defendants. <br><br>———————————————— <br><br> Vintage Associates, LLC, <br><br> Counter-Plaintiff, <br><br> vs. <br><br> John Branca, John McClain, Executors of the Estate of Michael Jackson, <br><br> Counter-Defendants. | CASE NO. CV-11-584 DDP (PJWx) <br><br> [Hon. Dean D. Pregerson] <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR (A) PARTIAL SUMMARY JUDGMENT ON THE COMPLAINT AGAINST ALL DEFENDANTS AND (B) SUMMARY JUDGMENT ON VINTAGE ASSOCIATES, LLC'S COUNTERCLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAME** <br><br> [*Filed concurrently with Separate Statement of Undisputed Facts; Declarations of Zia Modabber and Tami Sims; Request for Judicial Notice; and Notices of Lodging*] <br><br> Date:      July 23, 2012 <br> Time:     10:00 a.m. <br> Place:    Courtroom No. 3 |

Katten  KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 23, 2012 at 10:00 a.m. in Courtroom 3 of the above-entitled court, located at 312 North Spring Street, Los Angeles, CA 90012-4701, plaintiffs John Branca and John McClain, Executors of the Estate of Michael J. Jackson, Michael Jackson Company, LLC, MJJ Productions, Inc., and Optimum Productions ("Plaintiffs" or the "Estate") will and hereby do move for partial summary judgment on Plaintiffs' Complaint against Defendants Howard Mann ("Mann"), Sonia Lowe ("Lowe"), DC Netcast Media Group, Inc. ("DC Netcast"), Vintage Pop Media Group, LLC ("VPM"), Vintage Pop, Inc. ("Vintage Pop") and Vintage Associates LLC ("Vintage") (collectively, "Defendants").  Plaintiffs also move for summary judgment on Vintage's Counterclaim.

**Partial Summary Judgment**

Plaintiffs move for partial summary judgment on the ground that there is no genuine issue of material fact and Plaintiffs are entitled to: (a) judgment as a matter of law in their favor against each of Defendants' affirmative defenses; (b) judgment as a matter of law in their favor on each of Plaintiffs' claims; and (c) judgment as a matter of law on their request for a permanent injunction, as follows:

Issue 1:  Partial summary judgment should be granted in favor of Plaintiffs with respect to Defendants' affirmative defense that they own Michael Jackson's ("Jackson") intellectual property by virtue of a 2002 bankruptcy sale, because it is undisputed that: (a) Jackson was not a bankruptcy debtor and the bankruptcy sale was only a sale of the bankruptcy debtors' property; and (b) the bankruptcy sale included only physical items of personal property, not any intellectual property, let alone non-debtor Jackson's intellectual property.

Issue 2:  Partial summary judgment should be granted in favor of Plaintiffs with respect to Defendants' affirmative defense of *res judicata*, because it is undisputed that there is no identity of claims between the 2004 lawsuit between Jackson and Vaccaro et. al. and the claims in the present lawsuit.

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

1    Issue 3:  Partial summary judgment should be granted in favor of Plaintiffs with

2  respect to Defendants' affirmative defense of collateral estoppel, because it is

3  undisputed that no issues were actually litigated during the 2004 lawsuit.

4    Issue 4:  Partial summary judgment should be granted in favor of Plaintiffs with

5  respect to Defendants' affirmative defense based on the safe harbor provisions of the

6  Digital Millennium Copyright Act ("DMCA") because it is undisputed that: (a)

7  Defendants had actual knowledge of infringement because they were the infringers;

8  (b) Defendants are not service providers under the DMCA; and (c) Defendants did not

9  have an infringement policy in place at the time of the infringement and did not

10  register an agent with the Register of Copyrights, both of which are required under the

11  DMCA.

12    Issue 5:  Partial summary judgment should be granted in favor of Plaintiffs with

13  respect to Defendants' affirmative defenses of contributory negligence, waiver,

14  assumption of risk and unclean hands because these defenses have no application to

15  the claims at issue, there are no facts to support them, or both.

16    Issue 6:  Partial summary judgment should be granted in favor of Plaintiffs with

17  respect to Defendants' affirmative defenses of statute of limitations and laches

18  because it is undisputed that Defendants' misconduct arose at the earliest after

19  Jackson's death on June 25, 2009, this lawsuit was filed on January 11, 2011 and no

20  claims period expired in the interim.

21    Issue 7:  Partial summary judgment should be granted in favor of Plaintiffs on

22  their First Claim for Relief for copyright infringement relating to the unauthorized use

23  of *This Is It* "key art," because it is undisputed that Plaintiffs own the copyright in this

24  work and Defendants copied and distributed it without authorization.

25    Issue 8:  Partial summary judgment should be granted in favor of Plaintiffs on

26  their Second Claim for Relief for copyright infringement relating to the unauthorized

27  use of the song "Destiny," because it is undisputed that Defendants copied and

28

Katten
KattenMuchinRosenmanLLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

distributed it without authorization, and Plaintiffs have been assigned the right to pursue a claim for infringement by the owner of the work, Sony Music Entertainment.

Issue 9:  Partial summary judgment should be granted in favor of Plaintiffs on their Third Claim for Relief for copyright infringement relating to the unauthorized use of "liner notes" and other materials from the 25th Anniversary Edition CD and DVD of Michael Jackson's *Thriller*, because it is undisputed that Plaintiffs own the copyright in this work and Defendants copied and distributed it without authorization.

Issue 10:  Partial summary judgment should be granted in favor of Plaintiffs on their Fifth Claim for Relief for false designation of origin relating to the unauthorized use of the "Smooth Criminal Lean," because it is undisputed that Defendants' used Jackson's likeness without authorization in a manner likely to confuse the public as to any sponsorship by Plaintiffs' of Defendants' products or services.

Issue 11:  Partial summary judgment should be granted in favor of Plaintiffs on their Seventh Claim for Relief for federal cybersquatting, because it is undisputed that Defendants' had a bad faith intent to profit from using Jackson's name, or a confusingly similar name, in their domain names, which Defendants registered and used.

Issue 12:  Partial summary judgment should be granted in favor of Plaintiffs on their Eighth Claim for Relief for cyber piracy in violation of California Business and Professions Code section 17525 *et seq*., because it is undisputed that Defendants had a bad faith intent to register and use domain names that are confusingly similar to Jackson's name.

Issue 13:  Partial summary judgment should be granted in favor of Plaintiffs on their Ninth Claim for Relief for misappropriation of likeness under California Civil Code section 3344.1, because it is undisputed that Defendants used Jackson's likeness without authorization in VPM's corporate logo, which was used to brand their business, solicit purchases of their products and advertise their services.

Issue 14:  Partial summary judgment should be granted in favor of Plaintiffs on their Tenth Claim for Relief for declaratory relief, because it is undisputed that notwithstanding the purchase by Defendants of any items of personal property, Defendants have no rights in any of Jackson's intellectual property, including his right of publicity.

Issue 15:  Partial summary judgment should be granted in favor of Plaintiffs on their Eleventh Claim for Relief for unfair competition, because Defendants without authorization used marks confusingly similar to Jackson's.

Issue 16:  Partial summary judgment should be granted in favor of Plaintiffs on their Twelfth Claim for Relief for accounting, because it is undisputed that Defendants knowingly exploited Estate Assets and Plaintiffs are entitled to an accounting which will reveal Defendants' profits, some or all of which are due and owing to Plaintiffs.

Issue 17:  Partial summary judgment should be granted in favor of Plaintiffs on their request for a permanent injunction, because it is undisputed that Plaintiffs will suffer irreparable harm, money damages are inadequate, the balance of hardships are in Plaintiffs' favor and the injunction will serve the public's interest.

## **Summary Judgment**

Additionally, Plaintiffs seek summary judgment in their favor on Vintage's Counter-Claim for Declaratory Relief, because it is undisputed that Vintage's claim is identical to Plaintiffs' declaratory relief claim and Defendants have no ownership rights in any of Jackson's intellectual property, including his right of publicity.

## **Meet and Confer & Bases of Motion**

This motion is made following the conference of counsel pursuant to L.R. 7-3 which occurred on June 12, 2012 with counsel for all parties agreeing it was timely. Declaration of Zia Modabber ¶ 8.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities; the concurrently-filed Separate Statement of Undisputed Facts and Conclusions of Law; the supporting Declarations of Zia F.

Modabber and Tami K. Sims; the concurrently-filed Request for Judicial Notice; the pleadings and other documents on file with the Court; such other and further matters of which this Court must or may take judicial notice; any argument that may be heard by the Court at the time of the hearing; and any other matters that may be considered by the Court.

Respectfully submitted,

Dated: June 15, 2012

KATTEN MUCHIN ROSENMAN LLP

By:   /s/ Zia F. Modabber
          Zia F. Modabber
Attorneys for Plaintiffs

Dated: June 15, 2012

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP

By:   /s/ Howard Weitzman
          Howard Weitzman
Attorneys for Plaintiffs

**Katten**
KattenMuchinRosenmanLLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

# **TABLE OF CONTENTS**

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ..................................1

II. ORGANIZATION OF THIS MEMORANDUM .................................................3

III. STATEMENT OF UNDISPUTED FACTS ......................................................3

    A.  The Jackson Family Member Bankruptcies, And Sale Of The "Subject Property".......................................................................................3

    B.  The 2004 Michael Jackson Lawsuit...............................................................5

    C.  Defendants' Conduct Giving Rise To The Instant Action...........................6

IV. PROCEDURAL HISTORY ....................................................................................8

V.  STANDARDS FOR SUMMARY JUDGMENT ...................................................8

VI. THE UNDISPUTED FACTS SHOW THAT DEFENDANTS' AFFIRMATIVE DEFENSES FAIL. ..................................................................9

    A.  The 2002 Bankruptcy Sale Did Not Transfer Any Michael Jackson Intellectual Property. .........................................................................9

        1.  The 2002 Bankruptcy Sale Did Not Include Any Property Belonging To Jackson.....................................................................9

        2.  The 2002 Bankruptcy Sale Did Not Include An Interest In Any Of Jackson's Intellectual Property.........................................10

    B.  The Dismissal of the 2004 Lawsuit Does Not Bar Any Of Plaintiffs' Claims Under The Doctrine of *Res Judicata*. .......................11

        1.  *Res Judicata* Requires An "Identity of Claims," Which Does Not Exist Here. ..................................................................11

        2.  An Identity of Names Does Not Constitute An Identity Of Claims For Purposes Of *Res Judicata.* .............................................16

        3.  Collateral Estoppel Does Not Apply Because No Issues Were Litigated And Determined In The 2004 Lawsuit.................16

    C.  The DMCA Safe Harbor Defense Is Inapplicable. ..................................17

    D.  Defendants' Other Affirmative Defenses Are Also Meritless.................18

VII. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THEIR AFFIRMATIVE CLAIMS SHOULD BE GRANTED........................19

    A.  Undisputed Evidence Establishes Defendants' Liability On The First, Second, and Third Claims For Copyright Infringement.................19

    B.  Undisputed Evidence Establishes The False Designation Of Origin Claim For Unauthorized Use Of The "Smooth Criminal Lean" .............20

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

---

i

C.    Undisputed Evidence Establishes The Unfair Competition Claim..........21

D.    Undisputed Evidence Establishes A Federal Cybersquatting Claim........21

E.    Undisputed Evidence Establishes A California Cyber Piracy
      Claim. ..................................................................................................22

F.    Undisputed Evidence Establishes The Right Of Publicity Claim............22

G.    Plaintiffs Are Entitled To A Declaratory Judgment. ...............................23

H.    Plaintiffs Are Entitled To An Accounting. .............................................23

I.    Plaintiffs Are Entitled To A Permanent Injunction. ...............................24

VIII.  SUMMARY JUDGMENT SHOULD BE GRANTED ON VINTAGE'S
       COUNTER-CLAIM BECAUSE IT IS DUPLICATIVE...................................25

IX.    CONCLUSION .................................................................................................25

**Katten**
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

# **TABLE OF AUTHORITIES**

**Cases**

*A&M Records, Inc. v. Napster, Inc.,*
2000 WL 573136 (N.D. Cal. 2000) ...................................................18

*A.V. Costantini v. Trans World Airlines,*
681 F.2d 1199 (9th Cir. 1982) ...........................................................12

*Abdul-Jabbar v. GMC,*
85 F.3d 407 (9th Cir. 1996) ...............................................................20

*Apple Inc. v. Psystar Corp.,*
658 F.3d 1150 (9th Cir. 2011) ...........................................................24

*British Airways Bd. v. Boeing Co.,*
585 F. 2d 946 (9th Cir. 1978) ...............................................................8

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ..............................................................................8

*Cent. Delta Water Agency v. United States,*
306 F.3d 938 (9th Cir. 2002) .............................................................13

*Century 21 Real Estate Corp. v. Sandlin,*
846 F.2d 1175 (9th Cir. 1988) ...........................................................21

*Chartschlaa v. Nationwide Mutual Insurance Co.,*
538 F.3d 116 (2d Cir. 2008) ..............................................................11

*Clark Entm't Grp., Inc. v. Sony Music Entm't, Inc.,*
183 B.R. 73 (N.J. 1995) ......................................................................10

*Columbia Pictures Indus., Inc. v. Fung,*
2009 WL 6355911, CV-06-5578 (C.D. Cal. 2009) ...........................17

*Comedy III Productions, Inc. v. Gary Saderup, Inc.,*
25 Cal. 4th 387 (2001) ........................................................................23

*Cont'l Airlines, Inc. v. IntraBrokers, Inc.,*
24 F.3d 1099 (9th Cir. 1994) .............................................................24

*Dluhos v. Strasberg,*
2005 U.S. Dist. LEXIS 34383 (D.N.J. June 23, 2005) ......................21

*Eliminator Custom Boats v. Am. Marine Holdings, Inc.,*
2007 WL 4978243 (C.D. Cal. Nov. 5, 2007) ....................................19

*Ellison v. Robertson,*
357 F.3d 1072 (9th Cir. 2004) ...........................................................18

*Englewood Lending Inc. v. G & G Coachella Invs., LLC,*
651 F. Supp. 2d 1141 (C.D. Cal. 2009) .............................................25

*Feist Publications, Inc. v. Rural Telephone Servs. Co., Inc.,*
11, 499 U.S. 340 (1991) ......................................................................19

Katten
KattenMuchinRosenmanLLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

iii

*Ferrato v. Castro*,
    888 F. Supp. 33 (S.D.N.Y. 1995) ..................................................................15

*Frank v. United Airlines, Inc.*,
    216 F.3d 845 (9th Cir. 2000) ...............................................................13, 15

*Fund for Animals, Inc. v. Lujan*,
    962 F.2d 1391 (9th Cir. 1992) ....................................................................13

*Gerawan Farming, Inc. v. Rehrig Pacific Co.*,
    2012 WL 691758 (E.D. Cal., Mar. 2., 2012) ............................................19

*Hagan v. Gardner*,
    283 F.2d 643 (9th Cir. 1960) ........................................................................9

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
    896 F.2d 1542 (9th Cir. 1989) ....................................................................23

*Harkins Amusement Enterprises, Inc. v. Harry Nace Co.*,
    890 F.2d 181 (9th Cir. 1989) ......................................................................14

*Hells Canyon Pres. Council v. U. S. Forest Serv.*,
    403 F.3d 683 (9th Cir.  2005) ...............................................................13, 15

*Hendrickson v. Ebay, Inc.*,
    165 F. Supp. 2d 1082 (C.D. Cal. 2001) ....................................................17

*Int'l Techs. Consultants v. Pilkington PLC*,
    137 F.3d 1382 (9th Cir. 1998) ..............................................................13, 15

*Konigsberg Int'l v. Rice*,
    16 F.3d 355 (9th Cir. 1994) ........................................................................10

*Lawlor v. National Screen Serv. Corp.*,
    349 U.S. 322 (1955) ......................................................................13, 14, 16

*Liberty Mut. Ins. Co. v. Colonial Ins. Co.*,
    8 Cal. App. 3d 427 (1970) ...........................................................................19

*Marvel Characters, Inc. v. Simon*,
    310 F.3d 280 (2d Cir. 2002) ........................................................................15

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) .....................................................24

*Migra v. Warren City School Dist. Bd. of Educ.*,
    465 U.S. 75 (1984) .......................................................................................16

*Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*,
    568 F. Supp. 2d 1152 (C.D. Cal. 2008) .....................................................22

*Official Airline Guides v. Goss*,
    6 F.3d 1385 (9th Cir. 1993) ........................................................................21

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979) .....................................................................................11

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

*Radio TV Espanola S.A. v. New World Entm't, Ltd.*,
 183 F.3d 922 (9th Cir. 1999) ............................................................................10

*Rogers v. Koons*,
 960 F.2d 301 (2d Cir. 1992) ..............................................................................19

*Semtek Intern. Inc. v. Lockheed Martin Corp.*,
 531 U.S. 497 (2001) ...........................................................................................11

*Shields v. Zuccarini*,
 254 F.3d 476 (3d Cir. 2001) ..........................................................................21, 22

*Stone v. Williams*,
 970 F.2d 1043 (2d Cir. 1992) ............................................................................15

*Strichrath v. Globalstar, Inc.*,
 2008 WL 2050990 (N.D. Cal., May 13, 2008) ..................................................25

*Super-Krete Intern., Inc. v. Sadlier*,
 712 F. Supp. 2d 1023 (2010) .............................................................................19

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
 322 F.3d 1064 (9th Cir. 2003) ...........................................................................11

*Teselle v. McLoughlin*,
 173 Cal. App. 4th 156 (2009) ............................................................................24

*Thanh Tran v. Bank of America Corp.*,
 2012 WL 837198 (S.D. Cal., Mar. 12, 2012) ....................................................24

*Town of N. Bonneville v. Callaway*,
 10 F.3d 1505 (9th Cir. 1993) .............................................................................16

*VIA Techs., Inc. v. SONICBlue Claims, LLC*,
 782 F. Supp. 2d 843 (N.D. Cal. 2011) ...............................................................13

*Wanlass v. Olfman*,
 2007 U.S. Dist. LEXIS 18008 (D. Or. Feb. 20, 2007) ......................................16

*White v. Samsung Electronics Am.*,
 971 F.2d 1395 (9th Cir. 1992) ...........................................................................20

**Statutes**

15 U.S.C. § 1125(d)(1)(A) ........................................................................................21

15 U.S.C. § 1125(d)(B) .............................................................................................21

17 U.S.C. § 204(a) .....................................................................................................10

17 U.S.C. § 501(b) .....................................................................................................15

17 U.S.C. § 504(c) .....................................................................................................19

17 U.S.C. § 512(k)(1) ................................................................................................18

**Katten**
KattenMuchinRosenmanLLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

17 U.S.C. 512(c) ................................................................................2, 17, 18

Cal. Bus. & Prof. Code § 17208 ...................................................................19

Cal. Bus. & Prof. Code § 17525 ...................................................................22

Cal. Code Civ. Proc. § 3344 .........................................................................22

Cal. Code Civ. Proc. § 338(a) ......................................................................19

Cal. Code. Civ. Proc. § 3344.1 .....................................................................22

Charles A. Wright, Arthur R. Miller, 9 *Federal Practice & Procedure*
   § 2373 (3d ed. 2010)................................................................................16

**Other Authorities**

Fed. R. Civ. P. 56(c) ......................................................................................8

Fed. R. Civ. P. 56(e) ......................................................................................8

Fed. R. Civ. Proc. Rule 41(a)......................................................................15

Fed. R. Civ. Proc. Rule 41(b) ............................................................5, 11, 13

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

John Branca and John McClain, Executors of the Estate of Michael Jackson, Michael Jackson Company, LLC, MJJ Productions, Inc., and Optimum Productions ("Plaintiffs" or the "Estate") hereby move for: (a) partial summary judgment on their complaint against the Mann Defendants[1] and Vintage Associates LLC ("Vintage") (collectively, "Defendants"); and (b) summary judgment on Vintage's Counterclaim.[2]

After Michael Jackson's ("Jackson") death in 2009, and without the Estate's permission, Defendants created a website willfully exploiting a wide array of the Estate's intellectual property. There is no dispute that the website: (1) used the domain names "michaeljacksonsecretvault.com" and "jacksonsecretvault.com"; (2) displayed copyright protected images of Jackson; (3) displayed Jackson's name, likeness and image throughout; (4) offered for sale calendars and t-shirts bearing Jackson's name and likeness; and (5) copied and displayed "liner notes" written by Jackson for his "Thriller 25" album.  Defendant VPM also went so far as to incorporate a famous pose of Jackson into its corporate logo.

Defendants *admit all the wrongful conduct described above*, but assert three principal defenses, none of which has merit.  First, Defendants assert that when their predecessor purchased at a bankruptcy sale certain *physical* items of Jackson family memorabilia (defined below as the "Subject Property"), that predecessor also magically acquired Jackson's intellectual property embodied in some of the Subject Property, which it then transferred or licensed to Defendants.  However, the undisputed evidence establishes that nothing belonging to Jackson was sold, and

---

[1] Mann Defendants refers to Howard Mann ("Mann"), Sonia Lowe ("Lowe"), DC Netcast Media Group, Inc. ("DC Netcast), Vintage Pop Media Group, LLC ("VPM"), and Vintage Pop, Inc. ("Vintage Pop").

[2] Vintage's claim is duplicative of Plaintiffs' declaratory relief claim.  Plaintiffs seek a judicial declaration that Defendants own no intellectual property belonging to the Estate, and that regardless of certain physical items that certain Defendants purchased, they do not own and may not exploit any Jackson intellectual property that may be embodied in or on those items.  Conversely, Vintage seeks a judicial declaration that it owns and may exploit such Jackson intellectual property.

anything that was sold did not include any intellectual property.[3]  Also, the seller of the Subject Property was Jackson's parents' and two brothers' bankruptcy trustee, who could only sell those debtors' property.  Michael Jackson was not a debtor in any bankruptcy and *none of his property was or could have been sold*.  The bankruptcy judge's sale order and all the other documents connected to the transaction unequivocally establish these facts.

Second, Defendants incorrectly assert they are immune from liability under the doctrines of *res judicata* and collateral estoppel based on dismissal of a 2004 lawsuit filed by Jackson against Vintage Pop and its principal, Henry Vaccaro, Sr. ("Vaccaro")[4] (the "2004 Lawsuit").  But the law is clear that *res judicata* bars only identical claims arising from the same specific conduct.  The undisputed evidence here is that all of the wrongful conduct at issue took place after Jackson's death in 2009, which is years after the 2004 Lawsuit ended.  This lawsuit is based on new and different misconduct, and almost entirely on intellectual property assets that *did not even exist at the time of the 2004 Lawsuit*.  There is no "identity of claims" and no *res judicata*.  Moreover, Collateral estoppel does not apply because no issue was ever "actually litigated" in the 2004 action – a fundamental requirement of the doctrine.[5]

Third, on the copyright claims, Defendants assert that they fall within the safe harbor provisions of 17 U.S.C. 512(c).  Here too, the undisputed facts demonstrate Defendants' inability to satisfy core elements of the defense.  First, and most critical, Defendants had actual knowledge of the infringing content because *they admit to posting it on the Website*.  The defense does not apply where the defendant itself is the infringer.  Second, Defendants are not "service providers" as defined in the statute.

---

[3] For clarity, intellectual property shall include Jackson's right of publicity.

[4] Vaccaro is a principal of both Vintage Pop and Vintage.

[5] Not only do Defendants horribly misapply the doctrines of res judicata and collateral estoppel, they also argue dismissal of the 2004 Lawsuit somehow resulted in their actually owning Jackson's world famous name, likeness, image, copyrights and trademarks.  Of course, there is no authority supporting this fantastic assertion.

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

Third, it is undisputed that Defendants did not have a policy for dealing with repeat infringers at the time of the infringement, a statutory requirement for the defense.[6]

## II.    ORGANIZATION OF THIS MEMORANDUM

Because Defendants admit engaging in the activities sued upon, this Memorandum first addresses the failure of each of Defendants' affirmative defenses based on the undisputed facts.  Then, in Section VII, Plaintiffs establish that the undisputed facts entitle them summary judgment on liability for each of their claims, and their right to a permanent injunction.  Last Plaintiffs establish a right to summary judgment on Vintage's counterclaim for declaratory relief.

## III.    STATEMENT OF UNDISPUTED FACTS
### A.    The Jackson Family Member Bankruptcies, And Sale Of The "Subject Property"

In 1998, Vaccaro's company, HVV Corp. obtained a judgment for $1.45 million against several members of the Jackson family, excluding Michael Jackson.  SS 1-7.[7]  When HVV Corp. began executing against those judgment debtors, it located a large storage facility filled with Jackson family memorabilia, including photographs and audiotapes (the "Subject Property").  SS 8.  In 1999, and in response to HVV's seizure of the Subject Property, Joseph and Katherine Jackson (Michael's parents), and Jermaine and Tariano "Tito" Jackson (Michael's brothers) (together the "Debtors") filed bankruptcy under Chapter 7, 11 U.S.C. § 101, et seq.  SS 9.  In that bankruptcy, the Debtors filed bankruptcy schedules, under penalty of perjury, disclosing all of their assets (the "Schedules") (SS 10), which included only the following intellectual property (the "Disclosed IP Interests"):

▪    Joseph and Katherine Jackson: "Two (2) Points To: Janet Jackson older recording";

---

[6] Defendants list several other affirmative defenses, many of which are wholly inapplicable on their face such as "negligence by plaintiffs or others," "comparative negligence" and "assumption of risk."  As for the others such as "statute of limitations" and "laches," there is no evidentiary support for them.

[7] Defendants' Separate Statement of Uncontroverted Facts and Conclusions of Law, filed concurrently herewith is referred to herein as "SS."

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

▪    Jermaine Jackson: "Rights to Music: LA Face Records and Arista Records"; and

▪    Tito Jackson: "Publishing & writer's rights" to songs to be listed; however, no songs were actually included in his Schedules.  SS 11-13.  ***The Disclosed IP Interests do not include anything relating to or referencing Michael Jackson***.  *Id.*

On December 10, 2001, the Debtors' Trustee filed a motion to authorize the sale (the "Sale Motion") of the Subject Property to El-Rich Corp. ("El-Rich") (the "Bankruptcy Sale").  SS 14.  Specifically, the Trustee sought authority to sell all of the Debtors' rights, title and interests in all of the Subject Property, i.e. the personal property located at two Storage Facilities, pursuant to El-Rich's offer.  SS 15, 20.

A "Notice of Sale of Estate Property" ("Notice of Sale") was also filed identifying the property as "the Estates' right, title and interest in personal property stored at [the Storage Facilities]."  SS 17.  The sale was "'as is' 'where is' with no representations or warranties being made by the Trustee."  SS 19.

On December 20, 2001, Jackson objected to the Sale Motion because it was unclear if any of his personal property was subject to the sale.  SS 22.  In response, the Trustee clarified he was only selling the estates' right, title and interests in the Subject Property, and that "whatever Michael Jackson's rights are to the items in storage will not change because of the sale.  The Trustee is only selling the Estates' interests and the buyer will have to deal with Michael Jackson's claims, if he even has any, just as the Trustee would have to."  SS 23.

On January 10, 2002, the Bankruptcy Court heard argument on the Sale Motion, stating on the record that it did not include "anything that belongs to Michael Jackson."  SS 25-26.  On January 18, 2002, an order (the "Sale Order") was entered approving sale of "the Estates ***and only the Estates'*** right, title and interest in the [Subject] Property...."  [Emphasis added.[8]]  SS 27-28.  The Bill of Sale for the

---

[8] The emphasized portion of the court's language stating "and only the Estates' was handwritten on the Sale Order and appears to bear the Judge's initials.

transaction states that El- Rich purchased the estates' "right, title and interest in the personal property stored at [the Storage Facilities]." SS 31.

On July 29, 2002, El Rich sold the Subject Property to Vintage Pop. SS 33. The Bill of Sale states that El Rich sold only its "right, title and interest to the [Subject] Property." SS 34. On November 27, 2006, Vintage Pop sold the Subject Property to Vintage, and again the Bill of Sale states that Vintage acquired only Vintage Pop's "right, title and interest to the [Subject Property]." SS 36-37.

For all documents in the Subject Property's chain of title – including El Rich's offer, the Sale Motion, the Notice of Sale, the Sale Order and the Bills of Sale to El-Rich, Vintage Pop and Vintage -- ***there is no reference to or mention of any intellectual property belonging to Jackson***. SS 16, 18, 21, 29, 32, 35, 38.

### B.    The 2004 Michael Jackson Lawsuit

In early 2004, Vintage Pop and Vaccaro, created a "pay for view" member website using domain names: "MichaelJacksonCircus.com," "MJCircus.com," "MichaelJacksonFamilyCircus.com," "MJFamilyCircus.com," "JacksonVault.com" and "TheJacksonVault.com." SS 40-42. On that website, Jackson's name, likeness and photographs were commercially exploited, and certain of his copyrights, including handwritten song lyrics and personal property items described as "Personal Items for Michael," "Personal Notes for Michael" and Personal Photos for Michael" were displayed. SS 42. The personal property was from the Subject Property. SS 43.

As a result, on March 26, 2004, Jackson filed the 2004 Lawsuit against Vaccaro and others for conversion, copyright infringement, false designation of origin and related claims. SS 40. On May 26, 2004, a preliminary injunction was entered relating to the activities sued upon. SS 44. However, on January 3, 2006, the 2004 Lawsuit was dismissed with prejudice for Jackson's failure to prosecute, pursuant to FRCP, Rule 41(b) (the "2006 Dismissal"). SS 45-46.

## C.      Defendants' Conduct Giving Rise To The Instant Action

Michael Jackson died on June 25, 2009.  SS 50.  On October 16, 2009, Mann entered into an agreement entitled "Structured Management Agreement" with Vintage and Vaccaro, whereby Mann licensed and agreed to "manage" the commercial exploitation of the Subject Property.  SS 52, 54.  To that end, approximately three years after the 2006 Dismissal, Defendants created an entirely new website at www.michaeljacksonsecretvault.com (the "Website").  SS 56-57.  The Website went live on June 15, 2010 (SS 58) and sold Jackson merchandise including calendars and t-shirts bearing his name and image.  SS 56.

The names for the Website, which differ from the ones at issue in the 2004 Lawsuit, were selected by Mann and registered on September 28, 2009 by DC Netcast.  SS 60, 64, 66-67.  Additional names "MJgives.com" and "MJduets.com" were registered on August 18, 2009, and November 10, 2009.  SS 68, 70.  Defendants admit that the "MJ" in these domain names refers to Michael Jackson.  SS 69, 71.

Other than the "User Photos," "User Videos" and occasionally the "Newsfeed" sections of the Website -- which are the only places on the Website that contain any user-generated materials -- all content on the Website was provided by Defendants.  SS 72-77.    None of the Defendants has been granted a license or received any permission from the Estate to use any Estate assets (SS 78), as described below:

**Key Art From _This is It_**:  On or around January 2011, the Website displayed "key art" from the motion picture _This Is It_, which "key art" is described in paragraphs 24 and 25 of the Complaint and attached thereto as Exhibit C.  SS 79.  The "key art" -- an image of Michael Jackson with legs crossed, arms up and "This Is It" written across his chest -- was displayed by or at the direction of Mann.  SS 79-80.  Plaintiff Michael Jackson Company, LLC owns the copyright in the "key art."  SS 81.  The 2004 Lawsuit did not include a claim based on use of the "key art" (SS 82), which did not exist at the time of the 2006 Dismissal (SS 83) and was not used by Defendants until after Jackson's death (SS 85).

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

**Sound Recording Of "Destiny":**  A remix of the sound recording "Destiny" (and called "Opis None" on the Website), as described in paragraphs 45, 49-50 of the Complaint ("Destiny/Opis None"), was posted on the Website by Mann or at his direction.  SS 85.  When posted it was described as an "unreleased MJ track" entitled "Opis None."  SS 86.  Sony Music Entertainment owns the copyright in the sound recording, (SS 87), and assigned Plaintiffs the right to sue for Defendants' use (SS 88).  Destiny/Opis None was posted on the Website after June 25, 2009, and the 2004 Lawsuit did not assert any claim based on its use.  SS 91-92.

**Material From the 25th Anniversary CD & DVD Of *Thriller*:**  In January 2011, the Website displayed video and music from the 25th Anniversary DVD of *Thriller,* along with "liner notes" written by Jackson included in the CD ("Thriller Material"), as described in paragraphs 55-59 of the Complaint and attached thereto as Exhibit F.  SS 93.  Plaintiff MJJ Productions, Inc. owns the copyrights in the Thriller Material (SS 94), which appears in the Website's "In the Spotlight" section (SS 95), not the "User Photos," "User Videos" or "Newsfeed" sections where user-generated content appears.  SS 74-77.  The 2004 Lawsuit did not contain claims based on use of the Thriller Material (SS 98), which did not even exist until 2008.  SS 99-100.

**VPM's Logo:**  VPM's corporate logo using the "Smooth Criminal Lean" (the "VPM Logo"), as described in paragraph 75 of the Complaint, was designed by VPM.  SS 101.  In the VPM Logo, the left "arm" of the letter "V," is an image of Jackson and is "intended to look like" Jackson.  SS 102-03.  The 2004 Lawsuit did not include a claim based on the VPM Logo (SS 110), which was first used by Defendants after June 2009, and indeed not approved for use by Mann until January 2010. SS 104, 111.

The VPM Logo was part of a plan to make the VPM "brand" as big as possible (SS 105), and was used on the Website, printed letterhead, business cards and anywhere else it could be used.  SS 106.  VPM did not engage in any activities where it decided not to use the Logo as a means to identify its business.  SS 107.[9]

---

[9] VPM has a second corporate logo, which also contains an image of Jackson, and was approved by Howard Mann before being used.  SS 108-09.

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

**The "Jackson Secret Vault Lithograph Collection" Advertisement:**

Defendants created an advertisement using an unauthorized image of Jackson for the December 3, 2010 "Unveiling of the Jackson Secret Vault Lithograph Collection."  SS 112-13.  The 2004 Lawsuit included no claim based on this 2010 ad. SS 115-16.

## IV.   PROCEDURAL HISTORY

On January 20, 2011, Plaintiffs filed their Complaint against the Mann Defendants, all of whom answered on April 27, 2011, except for Lowe who answered on August 3, 2011.  Dkt 36, 64.  On April 6, 2012, the Complaint was amended to substitute Vintage for Doe Defendant 1.  Dkt. 76.  Vintage was served on April 18, 2012, answered on May 9, 2012 and with its answer asserted a counter-claim for declaratory relief duplicative of Plaintiffs'.  Dkt 79-80.  Plaintiffs answered the counter-claim on May 30, 2012.  Dkt 84.

## V.   STANDARDS FOR SUMMARY JUDGMENT

A party is entitled to summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *British Airways Bd. v. Boeing Co*., 585 F. 2d 946, 951 (9th Cir. 1978).  If the nonmoving party bears the burden of proof on an issue at trial, the "burden of the moving party [at summary judgment ] may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden then shifts to the nonmoving party, who must do more than merely rely on the allegations of its pleadings.  *Id*. "[T]he adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

## VI.  THE UNDISPUTED FACTS SHOW THAT DEFENDANTS' AFFIRMATIVE DEFENSES FAIL.

### A.  The 2002 Bankruptcy Sale Did Not Transfer Any Michael Jackson Intellectual Property.

#### 1.  The 2002 Bankruptcy Sale Did Not Include Any Property Belonging To Jackson

The Bankruptcy Sale did not transfer any right, title or interest to any of Jackson's property.  Jackson was not a Debtor in the bankruptcy, and at each step of the process the property sold was defined only as the trustee's or sellers' right title and interest in the Subject Property, *which necessarily could not include any property owned by Jackson.*  As detailed in section III.A above, the Subject Property included only the stored personal property found in the Storage Facilities, and:

■ The Sale Motion covered only El-Rich's offer, which pertained only to "*the bankruptcy estates'* right, title and interest" in the Subject Property.  SS 17, 20.

■ The trustee replied to Jackson's objection, writing:  "whatever Michael Jackson's rights are to the items in storage will not change because of the sale.  The Trustee is only selling the Estates' interests and the buyer will have to deal with . . . Jackson's claims, if he even has any, just as the Trustee would have to."  SS 23.

■ In his Reply, the trustee cited *Hagan v. Gardner*, 283 F.2d 643, 646 (9th Cir. 1960) to explain:

> "The trustee could only sell and convey such right, title and interest as he owned.  A sale by a trustee in bankruptcy is a judicial sale.  The purchaser is bound to know that the only title which can be sold by the trustee is his own right, title and interest, and the doctrine of caveat emptor, applicable generally to judicial sales, applies to a sale under order of the bankruptcy court. [ . . . ][T]he trustee did not and could not effect, appellant's title.  He merely transferred such interest as he had...."  SS 24 (first alteration added).

Katten

KattenMuchinRosenmanLLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

▪      The Bankruptcy Court specifically ruled that the sale did not include "anything that belongs to Michael Jackson...."  SS 26.

▪      Most importantly, the Sale Order explicitly authorizes sale of the Estates' "*and only the Estates*'" right, title and interests in the Subject Property.  SS 28.

At all times, it was clear to all parties that the trustee only had authority to sell, and did sell, *the Debtors'* property, not Jackson's.  Thus, El-Rich did not purchase anything belonging to Jackson, nor did any subsequent buyer.

## 2.      The 2002 Bankruptcy Sale Did Not Include An Interest In Any Of Jackson's Intellectual Property.

Even if, somehow, some Jackson property was sold in the Bankruptcy Sale -- and it could not -- the Bankruptcy Sale did not transfer any intellectual property.[10] First, as to copyrights, a transfer of copyright must be "in writing and signed by the owner [or owner's agent]."  17 U.S.C. § 204(a).  "[T]he parties' intent as evidenced by the writing must demonstrate a transfer of the copyright."  *Radio TV Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999).  The writing requirement "ensure[s] that the author 'will not give away his copyright inadvertently' and 'forces a party who wants to use the copyrighted work to . . . determine precisely what rights are being transferred and at what price.'"  *Konigsberg Int'l v. Rice*, 16 F.3d 355, 356-357 (9th Cir. 1994).  Here, no written transfer of copyright exists.  No copyrights are identified in a single document in the chain of title from the bankruptcy all the way through to Vintage, and none of the documents were signed by Jackson.

Also, the Sale Motion, the Offer and the Sale Order all specifically describe the Subject Property as "personal property" located in the Storage Facilities.  SS 14, 20, 27.  The consistent reference makes clear that the Bankruptcy Sale included only physical items of personal property.  None of the documents effecting the multiple transfers of the Subject Property refer to any intellectual property of any kind.  *Id.*

---

[10] *See Clark Entm't Grp., Inc. v. Sony Music Entm't, Inc.*, 183 B.R. 73 (N.J. 1995) (Under common law "it is well settled that intellectual property rights are separate and distinct from the material objects in which the work is embodied, so [an author can] convey ownership in the material objects . . . while reserving [its] copyright").

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel    310.788.4471 fax

Last, each of the Debtors attested in their Schedules that the only intellectual property they owned was the Disclosed IP Interests, which do not mention Jackson (but reference other Jackson family members).  SS 11-13.  If the Debtors owned intellectual property that was not disclosed, it could not have been sold in the Bankruptcy Sale.  Section 521 of the Bankruptcy Code requires a debtor to disclose all his interests at the commencement of a case.[11]  In short, Jackson was not a Debtor so nothing of his could have been sold, and in any event only personal property was sold.

**B.    The Dismissal of the 2004 Lawsuit Does Not Bar Any Of Plaintiffs' Claims Under The Doctrine of *Res Judicata*.**

    **1.    *Res Judicata* Requires An "Identity of Claims," Which Does Not Exist Here.**

"Under the doctrine of *res judicata*, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action."  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, n. 5 (1979).  In order to successfully assert *res judicata*, a defendant must establish the following three elements: "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties."  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003).  Based on the undisputed facts, Defendants cannot establish, at a minimum, the requisite element of an identity of claims.[12]

The Ninth Circuit looks to several factors when determining whether two successive lawsuits involve an "identity of claims" for purposes of *res judicata*:

    (1) whether rights or interests established in the prior judgment would

    be destroyed or impaired by prosecution of the second action; (2)

    whether substantially the same evidence is presented in the two

---

[11] Because full disclosure by debtors is essential to the proper functioning of the bankruptcy system, the Bankruptcy Code provides that undisclosed assets automatically remain property of the estate after the case is closed.  *Chartschlaa v. Nationwide Mutual Insurance Co.*, 538 F.3d 116, 122 (2d Cir. 2008).

[12] With respect to the second element (a "final judgment on the merits"), there is a compelling argument that notwithstanding the language of FRCP 41(b), dismissal of the Vaccaro Case provides no *res judicata* effect.  *Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 501-04 (2001).

Katten
Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

actions; (3) whether the two suits involve infringement of the same right; and (4) *whether the two suits arise out of the same transactional nucleus of facts*.

*A.V. Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982) (emphasis added).  The fourth factor, whether the two suits arise from the same transactional nucleus of fact, "is the most important" factor.  *Id.* at 1202.

On the undisputed facts, all of the factors establish that there is no identity of claims.  First, no rights or interests in the 2004 Lawsuit will be impaired by this action.  In the 2004 Lawsuit Vaccaro and Vintage Pop created a different website under a different name. SS 40-42.  The dismissal in 2006 meant that defendants there were not liable for any of the misconduct alleged (despite the issuance of a preliminary injunction based on a likelihood that Michael Jackson would prevail on the merits).  Nothing in this lawsuit would somehow subject Vaccaro and Vintage Pop to liability for the misconduct giving rise to the 2004 Lawsuit, which they escaped.

On the second factor, whether the same evidence will be presented, the evidence is entirely different.  The evidence in the 2004 Lawsuit related to an entirely different website, using a different name, having different content and even having different witnesses.  In this lawsuit, the evidence includes the infringement of intellectual property assets, most of which did not even exist when the 2004 Lawsuit was dismissed, e.g. artwork from the 2009 movie "*This Is It,*" and the 2008 "Thriller 25" CD and DVD.  SS 83, 100.   The Website did not exist, and neither did VPM's corporate logo incorporating the "Smooth Criminal Lean."  SS 57-58, 104.

The third factor looks at whether the same "right" is at issue.  While the generic names of the claims overlap between the 2004 Lawsuit and this one -- copyright infringement, violation of right of publicity, false designation of origin, etc. -- the similarities end there.  The copyrights at issue are different, the manners in which Jackson's publicity rights are infringed are different and the bases for the Lanham Act claims are different.  In fact, the entirety of the alleged misconduct is different.  *See*

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

*VIA Techs., Inc. v. SONICBlue Claims, LLC*, 782 F. Supp. 2d 843, 859 (N.D. Cal. 2011) (new claim did not "involve infringement of the same right" because the "infringement . . . had not even occurred at the time of [the first suit].").

The last and most important factor is whether two suits involve the same nucleus of facts.  This factor focuses on whether defendant's conduct is the same conduct that was at issue in the prior lawsuit, and whether the two causes of action allege conduct that is "contemporaneous."  *See Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1398-99 (9th Cir. 1992) (no *res judicata* where claims involve "different" conduct); *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000) (first judgment "cannot preclude claims based on events occurring after [its entry]").  In evaluating whether "a prior action involved the same 'nucleus of facts' for *res judicata*, [a court] must narrowly construe the scope of that earlier action."  *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 952-53 (9th Cir. 2002).

Pertinent here, in *Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322 (1955), the Supreme Court articulated a bright line rule -- when the new claim is based on conduct that occurred after the judgment in the first suit, the conduct arises from a different nucleus of facts.  *Id.* at 328; *see also Frank*, 216 F.3d at 851**;** *Int'l Techs. Consultants v. Pilkington PLC*, 137 F.3d 1382, 1387-88 (9th Cir. 1998).

In *Hells Canyon Pres. Council v. U. S. Forest Serv.*, 403 F.3d 683, 686 (9th Cir. 2005), the court explained that *res judicata* only bars new legal theories "arising out of the same transactional nucleus of facts" as the earlier lawsuit.  ***Res judicata does not "preclude claims based on events occurring after [the] date of [the first suit's judgment]*.**"  *Frank*, 216 F.3d at 851 (emphasis added).

Here, the 2004 Lawsuit was dismissed with prejudice pursuant to Rule 41(b) on January 3, 2006.  SS 45.  The instant claims are all based on Defendants' misconduct occurring after Jackson's death on June 25, 2009, and are separate and distinct in both time and content from any claims in the 2004 Lawsuit.  Under *Lawlor* and its progeny, this fact alone forecloses the possibility of any identity of claims.  Specifically:

- There was no claim in the 2004 Lawsuit concerning the use of "MichaelJacksonSecretVault.com," "JacksonSecretVault.com," "MJgives.com" or "MJduets.com." SS 60. The website there went by a different name and had different content. SS 40-42. The Website here did not even exist at the time of the 2004 Lawsuit. SS 57-58.

- There was no claim in the 2004 Lawsuit involving the "key art" of *This Is It* (SS 82), nor could there have been because *This Is It* was released in 2009. SS 83. Defendants did not use the "key art" until after Jackson's 2009 death. SS 50, 84.

- There were no claims in the 2004 Lawsuit based on the use of "liner notes" and video tracks from Jackson's 25th anniversary CD and DVD *Thriller*. SS 97-98. The 25th anniversary CD of Jackson's *Thriller* did not exist at the time of the 2006 Dismissal. SS 99-100. Defendants' use of the "liner notes" from the 25th anniversary of Jackson's *Thriller* did not occur until after June 25, 2009. SS 96.

- There was no claim in the 2004 Lawsuit based on Destiny/Opis None. SS 92. The track was not posted on the Website until after June 25, 2009. SS 91.

- There was no claim in the 2004 Lawsuit based on the VPM Logo. SS 110. Defendants' first use of the Logo was after June 25, 2009. SS 111.

- There was no claim in the 2004 Lawsuit based on the "Unveiling of the Jackson Secret Vault Lithograph Collection." SS 115. That event was advertised by Defendants as occurring in December 2010. SS 112.

- Last, Plaintiffs' current claims for accounting, unfair competition or declaratory relief are all based on the conduct described above, and are therefore not subject to *res judicata* for the same reasons, i.e., the nucleus of facts are entirely different as they occurred years after dismissal of the 2004 Lawsuit.[13]

---

[13] Whether or not Defendants' conduct in the instant lawsuit is a continuing course of conduct from the 2004 Lawsuit, which it is not, *res judicata* still does not apply. *See Lawlor*, 349 U.S. at 328; (holding prior judgment "precludes recovery on claims arising prior to its entry" but cannot "extinguish[] claims which did not even then exist and which could not possibly have been sued upon in the previous case."). Indeed, "[i]t is elementary that new . . . violations may be alleged after the date covered by decision or settlement . . . covering an earlier period." *Harkins Amusement Enterprises, Inc. v. Harry Nace Co.*, 890 F.2d 181, 183 (9th Cir. 1989).

In *International Technologies Consultants*, there was no *res judicata* because the facts giving rise to the second lawsuit "had not yet transpired" at the time of the first lawsuit. *Id.* Resolution of the prior claim did not establish that "[plaintiff] could not sue if [defendants] did in the future what they had done in the past." *Int'l Techs. Consultants*, 137 F.3d at 1389.[14] The same is true here where the facts giving rise to this lawsuit "had not transpired" at the time of the 2004 Lawsuit.

In addition, a copyright owner "has a property interest which, when invaded by an infringer, may be vindicated by an infringement action." *Stone v. Williams*, 970 F.2d 1043, 1049-50 (2d Cir. 1992) (citing 17 U.S.C. § 501(b)). "Each act of infringement is a distinct harm giving rise to an independent claim for relief." *Id.*; *see also Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 287-88 (2d Cir. 2002) (explaining an overlap of the issue of copyright ownership between a prior claim and a present claim does not bar the present claim).

*Ferrato v. Castro*, 888 F. Supp. 33 (S.D.N.Y. 1995) further illustrates the point. In *Ferrato*, a photographer sued an artist who used a photograph in a collage without authorization. When the photographer moved to dismiss her own copyright claims under FRCP 41(a), defendant asked for language in the dismissal that all future uses by defendant of the photograph were "fair use." *Id.* at 34. The court granted plaintiff's dismissal with prejudice, but held that the dismissal would not insulate defendant in the future. *Id.* at 34-35. The court explained that even if defendant had obtained a favorable judgment, it "would establish only that ***this particular*** use by defendant of plaintiff's photographs in her collage – i.e., displaying it at the Whitney Museum . . . – was 'fair' under the Copyright Act." *Id.* "We have no way of knowing ... whether or not any [future] display or publication would constitute fair use ...." *Id.*

---

By winning a prior suit, a defendant "'d[oes] not acquire immunity in perpetuity.'" *Int'l Techs. Consultants*, 137 F.3d at 1388.

[14] *See also Frank*, 216 F.3d at 850-51 (first suit regarding airline's policy did not bar second suit on subsequent policy because the conduct "aros[e] after the date of [the] earlier judgment"); *Hells Canyon Pres. Council*, 403 F.3d at 690-91 (no *res judicata* where second claim based on conduct taking place after conduct at issue in first suit).

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

This multitude of authorities compels the conclusion that Plaintiffs may not assert the bar of *res judicata* because the claims here arise from facts taking place after dismissal of the 2004 Lawsuit.  *See Wanless v. Olfman*, 2007 U.S. Dist. LEXIS 18008, at *30 (D. Or. Feb. 20, 2007) (granting summary judgment on *res judicata*).

### 2. An Identity of Names Does Not Constitute An Identity Of Claims For Purposes Of *Res Judicata.*

Defendants argued in their unsuccessful motion to dismiss before this Court that because the 2004 Lawsuit contained claims of the same name, there is an "identity of claims." This misguided theory ignores the mountain of authority above, and is premised on an impermissible assumption that, for example, if a plaintiff loses a "copyright" claim, he or she may never sue that defendant for a later and entirely different copyright infringement.   This is contrary to law and an identity of names means nothing for purposes of *res judicata.*

### 3. Collateral Estoppel Does Not Apply Because No Issues Were Litigated And Determined In The 2004 Lawsuit.

To foreclose relitigation of an issue under collateral estoppel, three elements must be met:  "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue ***must have been actually litigated*** in the prior litigation [by the party against whom preclusion is asserted]; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action."  *Town of N. Bonneville v. Callaway*, 10 F.3d 1505, 1508 (9th Cir. 1993) (emphasis added) (alteration in original).  Unlike *res judicata*, collateral estoppel requires "actual litigation and determination of the specific issues."  *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77, n. 1 (1984).

The Order dismissing the 2004 Lawsuit did not contain any findings related to any issues on the merits.  SS 45-46.  Accordingly, Defendants cannot assert collateral estoppel based on that judgment.  *Lawlor*, 349 U.S. at 327.  *See also,* Charles A. Wright, Arthur R. Miller, 9 *Federal Practice & Procedure* § 2373 (3d ed. 2010) ("Even though the dismissal is with prejudice, if no facts have been adjudicated, *as*

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

*when the dismissal is for want of prosecution*, the judgment . . . does not establish any facts to which the doctrine of collateral estoppel can be applied in later litigation on a different claim (emphasis added).") Thus, this defense fails as matter of law.

### C.   The DMCA Safe Harbor Defense Is Inapplicable.

The Digital Millennium Copyright Act ("DMCA") provides that a "service provider" shall not be liable for copyright infringement for material residing on its network that was stored "***at the direction of a user***." 17 U.S.C. 512(c) (emphasis added). The defense, which applies only to the copyright claims, is only available for "service providers" and only if one  (a) "does not have actual knowledge" of the infringement or (b) "is not aware of facts or circumstances from which infringing activity is apparent," **and** "does not receive a financial benefit directly attributable to the infringing activity. *Id.*  By the foregoing definition, the defense does not apply where, as here, the infringing material was posted by or at the direction of Defendants.

There is no safe harbor under the DMCA for service providers that "have actual knowledge that an activity using the material stored on its website is infringing." *Hendrickson v. Ebay, Inc*., 165 F. Supp. 2d 1082, 1088 (C.D. Cal. 2001).  Directly assisting a user to engage in infringement also bars reliance on the DMCA's safe harbor.  *Columbia Pictures Indus., Inc. v. Fung*, 2009 WL 6355911, CV-06-5578, at *12-18 (C.D. Cal. 2009) (no safe harbor where defendant "directly assisted users in engaging in infringement").  Here, Defendants admit their having posted the copyrighted "key art" from *This Is It* and Destiny/Opus None at the direction of Mann. SS 80, 85.  As for the Thriller Material, the undisputed facts show that it was also posted by Defendants because it is on the part of the Website that, according to the person most knowledgeable, only contains Defendants' content, ***not*** users'. Defendants had actual knowledge of infringing activity because they were the infringers, so the DMCA defense is inapplicable.

Moreover, a "service provider" is defined as an entity that provides or operates online services or network access and includes entities that facilitate digital online

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

communications among users, "of material of the user's choosing, without modification to the content of the material as sent or received."  17 U.S.C. § 512(k)(1).  Here, Defendants do not operate an online service or merely provide network access, nor do they merely passively facilitate digital communications between users.  Instead, Defendants created the Website and displayed infringing content themselves.  As such, they are not service providers under the DMCA.

Last, to fall within the "safe harbor" a defendant must: (a) have in place at the time of the infringement a policy of terminating, where appropriate, accounts of repeat infringers; and (b) register an agent to receive notices with the Register of Copyrights. 17 U.S.C. § 512(c).[15]  Although Defendants alluded in discovery to some type of DMCA policy, they could not produce one despite multiple document requests, or even provide information about its content.  They also produced no evidence that this phantom policy was in place at the time of the infringement at issue.  SS 117-125. *After* this action was filed, Defendants provided contact information on the Website to report infringing material, but not only was this too late, it did not constitute a policy for dealing with repeat infringers.  SS 124.  Last, Defendants did not register an agent with the Register of Copyrights. SS 119, 121.  Defendants do not come close to meeting the requirements for the DMCA's safe harbor.

### D.  Defendants' Other Affirmative Defenses Are Also Meritless.

There are no facts to support any of the remaining affirmative defenses, including contributory negligence, waiver, assumption of risk and unclean hands. Assuming negligence were even relevant as a defense, there are no facts that Plaintiffs were negligent in any manner, or that they consented to Defendants' misconduct.

Further, Defendants' misconduct arose at the earliest after Jackson's death in June 2009 (SS 50, 63, 65, 84, 91, 96, 111, 116), and no statute expired before this

---

[15] *Ellison v. Robertson*, 357 F.3d 1072, 1080 (9th Cir. 2004) (DMCA defense did not apply to AOL, in part, because it "did not have an effective notification procedure in place at the time [of the infringement]"); *A&M Records, Inc. v. Napster, Inc.*, 2000 WL 573136 *9 (N.D. Cal. 2000) ("The fact that Napster developed . . . a formal policy *after* the onset of this action should not moot plaintiffs' claim").

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

lawsuit was filed in January 2011.  Indeed, None of the statute of limitations at issue here is less than three years.  *See* 17 U.S.C. § 504(c) (copyright claim is 3 years); *Eliminator Custom Boats v. Am. Marine Holdings, Inc*., 2007 WL 4978243 *7 (C.D. Cal. Nov. 5, 2007) (false designation of origin is 4 years); *Super-Krete Intern., Inc. v. Sadleir*, 712 F. Supp. 2d 1023, 1035 (2010) (federal cybersquatting claim is 4 years); Cal. Code Civ. Proc. § 338(a) (cyber piracy and misappropriation of likeness are 3 years); *Liberty Mut. Ins. Co. v. Colonial Ins. Co*., 8 Cal. App. 3d 427 (1970) (declaratory relief claim same as underlying claim); Cal. Bus. & Prof. Code § 17208 (unfair competition claim is 4 years); *Gerawan Farming, Inc. v. Rehrig Pacific Co.*, 2012 WL 691758, *13 (E.D. Cal., Mar. 2., 2012) (accounting claim same as underlying claim).  There is no evidentiary support for any of these "throw away" affirmative defenses, most of which do not even apply to the claims asserted.

## VII.   PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THEIR AFFIRMATIVE CLAIMS SHOULD BE GRANTED.

### A.   Undisputed Evidence Establishes Defendants' Liability On The First, Second, and Third Claims For Copyright Infringement.

To establish a prima-facie case of copyright infringement, plaintiff must prove ownership of a valid copyright and that defendant copied original elements of the work.  *Feist Publications, Inc. v. Rural Telephone Servs. Co., Inc*., 11, 499 U.S. 340, 361 (1991).  Where, as here, a defendant admits taking plaintiff's work, there is "undisputed direct evidence of copying," and summary judgment is appropriate. *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992).

All of the copyrighted works at issue are owned by Plaintiffs and/or Plaintiffs are authorized to bring an infringement claim.  SS 81, 87-88, 94.  Defendants expressly admit that the "key art" from *This Is It* and the sound recording Destiny/Opus None were copied and posted on the Website by Mann or at his direction.  SS 80, 85.  The Thriller Material was posted in the area of the Website that only contains content generated by Defendants, not by users.  SS 72-77, 95.  Because there is undisputed direct evidence that Defendants copied Plaintiffs' copyrights,

Plaintiffs are entitled to summary judgment on their first, second and third claims for copyright infringement.

### B. Undisputed Evidence Establishes The False Designation Of Origin Claim For Unauthorized Use Of The "Smooth Criminal Lean"

Under Section 43(a) of the Lanham Act, a claim for false designation of origin/false endorsement arises from:

> the unauthorized use of a celebrity's identity . . . [which] alleges the misuse of a trademark, i.e. a symbol or device such as a ***visual likeness*** . . . or other uniquely distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's sponsorship . . . of the product.

*Abdul-Jabbar v. GMC*, 85 F.3d 407, 410 (9th Cir. 1996) (emphasis added).

To determine whether a party has raised a genuine issue of material fact as to the likelihood of confusion based on an endorsement, a court considers the following factors:  (1) the "level of recognition the celebrity enjoys among members of society"; (2) the "reasons for or source of the plaintiff's fame"; (3) "similarity of the marks"; (4) "evidence of actual confusion"; (5) "marketing channels used"; (6) "likely degree of purchaser care"; and (7) "defendant's intent in selecting the mark."  *See White v. Samsung Electronics Am.*, 971 F.2d 1395, 1400-01 (9th Cir. 1992).

Jackson was a world famous recording artist, dancer and entertainer.  He was inducted into the Rock and Roll Hall of Fame twice, won 13 Grammy Awards and multiple American Music Awards.  SS 47.  He had 13 number-one singles in the United States in his solo career, is known as the "King of Pop," and is one of the best-selling artists of all time.  SS 48.  Jackson enjoyed an almost unparalleled level of recognition among the public during his life, and that recognition continues today.

The VPM Logo incorporates an image of Jackson performing one of his famous dance moves, the "Smooth Criminal Lean."  SS 49, 101-102.  Mann admits authorizing use of the VPM Logo, and he specifically "***intended [the image in the VPM Logo] to look like***" *Michael Jackson*.  SS 102 (emphasis added), 103. Defendants used the VPM Logo in order to make its brand as big as possible.  SS 105-

Katten
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

07.  Because they "knowingly adopt[ed] a mark similar to [Plaintiffs'], courts will presume an intent to deceive the public."  *Official Airline Guides v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993).

The weight of these factors establish that Defendants' use of Jackson's well-recognized likeness in the VPM Logo is not just likely to suggest sponsorship by the Estate when none exists, it is intended to do so.  Plaintiffs are entitled to judgment on this claim.

**C.    Undisputed Evidence Establishes The Unfair Competition Claim.**

"Likelihood of confusion is also the test in California for whether use of a similar [mark] constitutes unfair competition."  *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).  For the same reasons Plaintiffs are entitled to judgment on their trademark claim, they are also entitled to judgment on their claim for unfair competition.  *See id.* at 1178-1180 (affirming summary judgment for plaintiff on federal trademark claim and on California unfair competition claim).

**D.    Undisputed Evidence Establishes A Federal Cybersquatting Claim.**

Under the Anticybersquatting Consumer Protection Act ("ACPA"), "[a] person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties . . . (i) [it] has a bad faith intent to profit from that mark ...; and (ii) registers, traffics in, or uses a domain name [that is confusingly similar to another's mark]."  15 U.S.C. § 1125(d)(1)(A).  A court considers a non-exhaustive list of factors to determine bad faith.  15 U.S.C. § 1125(d)(B).  A defendant's intent to refer to the plaintiff in adopting the mark, using plaintiff's mark in the domain name itself or registering multiple domain names confusingly similar to plaintiff's mark, all evidence bad faith.  *See Dluhos v. Strasberg*, 2005 U.S. Dist. LEXIS 34383, *20-21 (D.N.J. June 23, 2005); *Shields v. Zuccarini,* 254 F.3d 476, 483-84 (3d Cir. 2001).

Defendants registered multiple domains (michaeljacksonsecretvault.com, jacksonsecretvault.com, mjgives.com and mjduets.com), all of which are confusingly

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

similar and undeniably refer to Jackson.  They each contain his name or the initials "MJ," which Defendants admit refer to Jackson.  SS 66-71.  Defendants used michaeljacksonsecretvault.com and jacksonsecretvault.com to sell products bearing Jacksons' name, likeness and image.  SS 56.

The undisputed evidence is that Defendants intended, in bad faith, to profit from the goodwill associated with Jackson's name.  Thus, Plaintiffs are entitled to summary judgment on this claim.  *See Shield*, 254 F.3d at 483-84, 486 (granting summary judgment for the Estate of Lee Strasberg where defendant registered a domain name incorporating Strasberg's name and intended it to refer to him).

**E.     Undisputed Evidence Establishes A California Cyber Piracy Claim.**

Under California Business & Professions Code § 17525, "[i]t is unlawful for a person, with a bad faith intent to register, traffic in, or use a domain name, that is identical or confusingly similar to the personal name of [a] deceased personality, without regard to the goods or services of the parties."  As discussed above, Defendants registered and used domain names identical and confusingly similar to Jackson's name, with the bad faith intent to profit from his goodwill.  Plaintiffs are entitled to judgment on their Cyber Piracy claim.

**F.     Undisputed Evidence Establishes The Right Of Publicity Claim.**

Pursuant to "California Civil Code § 3344.1 . . . celebrities . . . are deemed to possess a posthumous right of publicity at the time of their death that can be expressly bequeathed by will or transferred to the residuary beneficiary under the deceased celebrity's will."  *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc*., 568 F. Supp. 2d 1152, 1197 (C.D. Cal. 2008).  Section 3344.1 provides:

> Any person who uses a deceased personality's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services, without prior consent . . . shall be liable for any damages sustained by the person . . . .

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

As examples, the statute precludes using a celebrity's name or likeness on a t-shirt for sale, or in a commercial advertising that same or another t-shirt. *Comedy III Productions, Inc. v. Gary Saderup, Inc*., 25 Cal. 4th 387, 395 (2001) (holding the sale of lithographs and t-shirts with celebrities' likeness violated their right of publicity).

When Jackson died his right of publicity became part of his Estate, who registered ownership with the California Secretary of State pursuant to 3344.1((f)(2). SS 50-51.  Defendants used Jackson's likeness in their VPM Logo to promote their business, including the Website sale of Jackson merchandise. SS 101-07.  Further, Jackson's likeness was used to promote the "Unveiling of the Jackson Secret Vault Lithographic Collection."  SS 112-13.  The undisputed evidence entitles Plaintiffs to summary judgment.

### G.     Plaintiffs Are Entitled To A Declaratory Judgment.

On a claim for declaratory relief, plaintiff must show "a substantial controversy between parties having adverse legal interests, and the controversy is of sufficient immediacy and reality to warrant declaratory relief." *Hal Roach Studios, Inc. v. Richard Feiner & Co*., 896 F.2d 1542, 1555 (9th Cir. 1989).  Here, an actual controversy exists over the parties' rights  to the intellectual property embodied in the Subject Property.  Plaintiffs seek a declaratory judgment that Defendants do not own Jackson's intellectual property embodied therein.  As detailed above in Section VI, the undisputed evidence establishes (a) no rights whatsoever belonging to Jackson, including intellectual property embodied in the Subject Property, were transferred or acquired through the bankruptcy proceedings; and (b) dismissal of the 2004 Lawsuit did not miraculously flip ownership of the rights sued upon to defendants in that action.  Thus, Plaintiffs are entitled to summary judgment on this claim.

### H.     Plaintiffs Are Entitled To An Accounting.

To establish a claim for accounting, a plaintiff must show: (1) facts and circumstances that require an accounting and (2) some balance is due to the plaintiff. *Thanh Tran v. Bank of America Corp*., 2012 WL 837198 *3 (S.D. Cal., Mar. 12,

Katten

KattenMuchinRosenmanLLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

2012).  An accounting "may be used as a discovery device" to determine "sums [that] are owed to the plaintiff."  *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 180 (2009).

Defendants knowingly exploited Estate assets to promote their Website and the merchandise for sale thereon.  SS 56, 79-116.  Plaintiffs are entitled to an accounting which will reveal Defendants' profits, some or all of which are owed to Plaintiffs.

## I.     Plaintiffs Are Entitled To A Permanent Injunction.

"[I]f there is no genuine issue of material fact to try," "a permanent injunction [may be] issued on summary judgment."  *Cont'l Airlines, Inc. v. IntraBrokers, Inc.*, 24 F.3d 1099, 1102 (9th Cir. 1994); *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1161 (9th Cir. 2011) (appropriate to enjoin future infringement of copyrighted works); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1217, 1219-22 (C.D. Cal. 2007) (plaintiff entitled to permanent injunction where (a) *inter alia* defendants' infringement occurred online and there was evidence of defendants' inability to pay damages; (b) there was an inference of future violations; and (c) the public interest was served by protecting copyright owners' rights.

Plaintiffs are entitled to a permanent injunction because they suffered irreparable harm and monetary damages are inadequate.  Because Defendants misconduct took place online, (SS 79, 85-86, 93, 106), there is no way to identify all Website visitors likely to have been confused by Defendants' misuse of Estate intellectual property.  There is also no way to determine how many visitors may have copied infringing material.  Further, Defendants are likely unable to pay damages given Vaccaro's IRS debt of roughly $500,000 and Mann's debt to Vintage of $550,000 (SS 126-27).

The balance of hardships is in Plaintiffs' favor because Defendants' past infringement "gives rise to an inference" of future violations.  The Website was actually built to exploit Jackson's intellectual property.  Defendants will suffer no harm by being prevented from exploiting intellectual property they do not own; Plaintiffs surely will.  Last, a permanent injunction serves the public interest by

protecting Plaintiffs' copyrights from future infringement, as well as preventing consumer confusion resulting from such infringement.

## VIII.   SUMMARY JUDGMENT SHOULD BE GRANTED ON VINTAGE'S COUNTER-CLAIM BECAUSE IT IS DUPLICATIVE.

When a defendant's counter-claim is redundant of the relief sought by plaintiff or of defendant's defenses, a court has discretion to dismiss the claim.  *Englewood Lending Inc. v. G & G Coachella Invs., LLC*, 651 F. Supp. 2d 1141 (C.D. Cal. 2009) (dismissing counter-claim because it sought the "opposite" of plaintiff's requested relief); *Strichrath v. Globalstar, Inc.*, 2008 WL 2050990 (N.D. Cal., May 13, 2008).

Vintage's counter-claim requests declaratory relief on the ownership of the Subject Property, specifically including the intellectual property embodied on or within the Subject Property, and Jackson's publicity rights.  Further, Vintage asserts in its affirmative defenses that Plaintiffs forfeited their intellectual property.  As such, Vintage's counter-claim should be dismissed because it is the exact opposite of Plaintiff's declaratory relief claim and duplicates Vintage's own affirmative defenses.

The Court may also grant summary judgment on the counter-claim because, as detailed above, the undisputed facts establish Plaintiffs' right to a declaratory judgment that Defendants ***do not own anything belonging to Jackson, including any intellectual property embodied on or within the Subject Property***.

## IX.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for summary judgment, or in the alternative, summary adjudication.

Dated: June 15, 2012                         KATTEN MUCHIN ROSENMAN LLP

By:   /s/ Zia F. Modabber
Zia F. Modabber
Attorneys for Plaintiffs

Dated: June 15, 2012                         KINSELLA WEITZMAN ISER KUMP
& ALDISERT LLP
By:   /s/ Howard Weitzman
Howard Weitzman
Attorneys for Plaintiffs