O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BRANCA AND JOHN McCLAIN, Executors of the Estate of Michael J. Jackson; MICHAEL JACKSON COMPANY, LLC, a California Limited Liability Company; MJJ PRODUCTIONS, INC., a California corporation; OPTIMUM PRODUCTIONS, a California corporation,<br><br>          Plaintiffs,<br><br>    v.<br><br>HOWARD MANN, an individual; SONIA LOWE, an individual; DC NETCAST MEDIA GROUP, INC., an unknown corporation; VINTAGE POP MEDIA GROUP, LLC, a California limited liability company; VINTAGE POP INC., an unknown corporation; VINTAGE POP MEDIA, LLC, an unknown limited liability company,<br><br>          Defendants. | Case No. CV 11-00584 DDP (PJWx)<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Docket No. 86] |

Presently before the court is Plaintiffs' Motion for (A) Partial Summary Judgment on the Complaint Against all Defendants

and (B) Summary Judgment on Vintage Associates, LLC's Counterclaim ("Motion"). Having reviewed the parties' moving papers and heard oral argument, the court GRANTS the Motion and adopts the following Order.

## I. BACKGROUND

Plaintiffs filed this action against Defendants on January 20, 2011. Plaintiffs allege that Defendants are commercially exploiting without authorization intellectual property created by the late Michael Jackson ("Jackson") and now owned by Plaintiffs. Defendants argue, to the contrary, that they obtained the rights to use this intellectual property at a bankruptcy sale involving members of Jackson's family. Defendants also argue that some of Plaintiffs' claims are barred by res judicata, and that Plaintiffs have not met their summary judgment burden on other claims.

The following material facts are not in dispute. In 1998, a company owned by one of the Defendants obtained a monetary judgment against Jackson's parents and two of his brothers ("Debtors"). In enforcing its judgment, the company located a storage facility with Jackson family memorabilia, including photographs and audio recordings ("Subject Property"). In 1999, the Debtors filed for bankruptcy and disclosed all of their assets, including certain intellectual property, but none of the intellectual property at issue here. In 2001, the Debtors' trustee sought authorization for a bankruptcy sale of the Subject Property. Jackson objected to the sale, on the ground that it was unclear whether the sale involved any of his property. A bankruptcy court found that the Subject Property did not include "anything that belongs to Michael Jackson," and authorized the sale of "the Estates and only the

2

Estates' right, title and interest, in the Property." The eventual Bill of Sale similarly states that the sale included "the Estates' right, title and interest in personal property" from the storage facility. One of the Defendants subsequently obtained the Subject Property from the purchaser at the bankruptcy sale.

In 2004, certain Defendants created a "pay per view" website using domain names such as "MichaelJacksonFamilyCircus.com" and "TheJacksonVault.com." At the website, the Defendants commercially exploited Jackson's name and likeness, as well as photographs and other copyrighted material from the bankruptcy sale. Jackson therefore filed a lawsuit against these Defendants, alleging claims for: copyright infringement, 17 U.S.C. § 101; false designation of origin, 15 U.S.C. § 1125(a); cybersquatting, 15 U.S.C. § 1125(d); and misappropriation of likeness, Cal. Civ. Code § 3344.1. The court initially granted Jackson a preliminary injunction, but ultimately dismissed the action with prejudice in 2006, due to Jackson's failure to prosecute.

After Jackson's death in 2009, Defendants created a new website with domain names such as "michaeljacksonsecretvault.com" and "MJgives.com." At the website, Defendants have displayed: copyright protected "key art" of Jackson from the movie "This Is It"; a copyright protected audio recording of the song "Destiny"; copyright protected material from an anniversary release DVD of "Thriller"; and, as part of a corporate logo and advertisement, an image of Jackson performing a dance move known as the "Smooth Criminal Lean." Plaintiffs filed this action in response, asserting claims for: copyright infringement, 17 U.S.C. § 101; false designation of origin, 15 U.S.C. § 1125(a); cybersquatting,

3

15 U.S.C. § 1125(d); cyber piracy, Cal. Bus. & Prof. Code § 17525; misappropriation of likeness, Cal. Civ. Code § 3344.1; unfair competition, Cal. Bus. & Prof. Code § 17200; declaratory relief; and an accounting. Plaintiffs also seek a permanent injunction against Defendants' alleged unauthorized use.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Id. at 248. No genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not enough for a party opposing summary judgment to "rest on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 259. Instead, the nonmoving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 325. The "mere

existence of a scintilla of evidence" in support of the nonmoving party's claim is insufficient to defeat summary judgment. Anderson, 477 U.S. at 252.

### III. Discussion

Plaintiffs move for summary judgment on a number of issues. First, Plaintiffs contend that they are entitled to summary judgment as to each of Defendants' affirmative defenses. These include Defendants' contentions that they acquired certain intellectual property at issue through the bankruptcy sale, and that some of Plaintiffs' claims are barred by res judicata as a result of the 2004 lawsuit. Second, Plaintiffs seek summary judgment on a number of their claims, including: a) copyright infringement as to the "This Is It" key art, "Destiny" song, and "Thriller" material; b) false designation of origin for Defendants' use of Jackson's likeness performing the "Smooth Criminal Lean"; c) misappropriation of likeness for Defendants' commercial exploitation of this and other images of Jackson; d) unfair competition based on this alleged unauthorized use; e) cybersquatting and cyber piracy for Defendants' exploitation of Jackson's name in their domain names; f) for an accounting to reveal Defendants' profits from the unauthorized use; g) for a permanent injunction against the unauthorized use; and h) for declaratory relief as to ownership of the intellectual property at issue. Finally, Plaintiffs also seek summary judgment against Defendant Vintage Associates LLC's declaratory relief counterclaim that it, in fact, owns this intellectual property.

    **A.   Undisputed Issues**

As an initial matter, Defendants have either not challenged or expressly conceded Plaintiffs' requests for summary judgement as to: 1) Defendants' affirmative defenses based on the Digital Millennium Copyright Act, contributory negligence, waiver, assumption of risk, unclean hands, statutes of limitations, and laches; 2) Plaintiffs' claims for copyright infringement of the "This Is It" key art, "Destiny" song, and "Thriller" material,[1] as well as for unfair competition and an accounting; and 4) Defendant Vintage Associates LLC's counterclaim for declaratory relief.  The court finds that Plaintiffs have met their initial burden of proof on these undisputed issues and are therefore entitled to summary judgment thereupon.

**B.   Bankruptcy Sale and Ownership of Rights**

As an affirmative defense, Defendants allege that they acquired rights to some of the intellectual property at issue through the aforementioned bankruptcy sale.  Plaintiffs argue, to the contrary, that the bankruptcy sale sold only Debtors' personal property, and did not transfer any rights, title, or interest to Jackson's intellectual property.  The court agrees.

First, the court finds that there is no genuine issue of material fact as to Jackson's ownership of the intellectual property rights.  Defendants claim that Jackson's parents, two of the bankruptcy sale Debtors, acquired these rights through "work for hire" agreements and "implied releases" with Jackson.

---

[1] Defendants do argue that genuine issues of material fact remain as to damages on these claims.  As Plaintiffs correctly note, however, neither side has moved for summary judgment as to damages.  These issues are therefore not presently before the court.

6

Defendants' only evidence of these agreements and releases, however, is: 1) sworn statements by Jackson's parents, allegedly provided to one of the Defendants and attached to his declaration, asserting that they were the "rightful owner[s]" of certain "assets" sold at the bankruptcy sale; and 2) the deposition testimony of an attorney witness that Jackson "very likely" had a work for hire relationship with his father. (Decl. of Howard Mann in Supp. of Defs.' Opp'n to Mot. ¶ 4, Exs. 1-2; Decl. of Janet Conway in Supp. of Defs.' Opp'n to Mot. ¶ 3, Ex. A at 118-19.) This evidence is insufficient to create a genuine dispute as to ownership. As Plaintiffs note, the attorney only speculates as to the existence of a work for hire agreement. Similarly, the parents' statements are conclusory, providing no explanation for how the parents came to own the assets. Nor do the statements specifically assert ownership of any intellectual property rights in the assets, as opposed to simply the physical assets themselves over which there is no dispute. Notably, the parents did not list any such intellectual property rights on their bankruptcy disclosures either.

    Moreover, regardless of who owned the relevant intellectual property rights, the court finds that none of these rights were transferred through the bankruptcy sale. Defendants concede that there was no express conveyance of any intellectual property rights, but contend that the transfer of all of Debtors' "rights, title, and interest" in the Subject Property was sufficient to convey such intellectual property rights. The court disagrees. Defendants rely on a Seventh Circuit decision holding that a sale agreement does not necessarily have to "use the word 'copyright,'"

7

and can instead "use terminology such as 'all assets' that clearly includes copyrights." ITOFCA, Inc. v. MegaTrans Logistics, Inc., 322 F.3d 928, 931 (7th Cir. 2003). However, in applying this holding to find a likely transfer of copyright interests, the court considered all of the evidence surrounding the bankruptcy sale. There, the sale expressly conveyed "right, title and interest in all patent, copyright and trade secret rights in and to all computer software." Id. at 929. Language in the bankruptcy court's order and from an exchange between the lawyers and the bankruptcy judge also made clear that the sale had transferred intellectual property rights. See id. at 930-31. Here, to the contrary, none of the facts surrounding the sale of Debtors' personal property from a storage facility indicate a transfer of any intellectual property rights. Cf. Bryant v. Gordon, 483 F. Supp. 2d 605, 611-12 (N.D. Ill. 2007) (distinguishing ITOFCA on similar grounds).

**C. Res Judicata**

Defendants also argue that res judicata from the 2004 lawsuit bars some of Plaintiffs' current claims. As the Supreme Court made clear in a case involving similar issues, it is important to distinguish res judicata (i.e. claim preclusion) from collateral estoppel (i.e. issue preclusion). See Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 326 (1955). There can be no collateral estoppel against Plaintiffs here, because no issues were "actually litigated and determined in the prior suit," as required for issue preclusion. Id. In particular, there was no adjudication as to the ownership of the relevant intellectual property rights. Claim preclusion, on the other hand, does not require that anything be

8

actually litigated.  Instead, it requires a "judgment 'on the merits' in a prior suit involving the same parties or their privies," id., as well as an "identity of claims."  <u>Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency</u>, 322 F.3d 1064, 1077 (9th Cir. 2003).  Here, Plaintiffs do not seriously dispute that the dismissal with prejudice pursuant to Rule 41(b) constitutes a judgment on the merits.  Nor is there any dispute as to privity between parties.  Plaintiffs do, however, contend that there is no identity of claims.

Although the Ninth Circuit has looked at multiple factors in determining whether there is an identity of claims, the primary focus is whether the "two suits arise from the same transactional nucleus of facts."  <u>Tahoe-Sierra</u>, 322 F.3d at 1078 (internal quotation marks omitted).  Here, Defendants concede that there is no shared nucleus of facts or identity of claims for the alleged infringement of intellectual property created after the judgment in the 2004 action, such as the "This Is It" key art and "Thriller" material.  Defendants maintain, however, that there is an identity of claims for Plaintiffs' claims involving the Subject Property from the bankruptcy sale.  Plaintiffs respond that these claims do not arise from same nucleus of facts either, because they involve entirely new acts of infringement that took place long after the judgment in the 2004 action.  The court agrees.

As Plaintiffs explain, their prior lawsuit was based only on Defendants' pre-2004 attempts to exploit Jackson's intellectual property.  Plaintiffs' present claims, to the contrary, involve only allegedly infringing conduct that occurred after 2009.  Specifically, post-2009, Defendants have used an entirely new

9

website, domain names, corporate logo, and advertisement in the alleged infringement at issue in the present action. Accordingly, <u>all</u> of the misconduct alleged in this suit took place long after the 2004 action, and the claims from the two suits therefore do not arise from the same transactional nucleus of facts.[2] See <u>Lawlor</u>, 349 U.S. at 329 ("While the 1943 judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case."); <u>Stone v. Williams</u>, 970 F.2d 1043, 1049 (2d Cir. 1992) ("Each act of [copyright] infringement is a distinct harm giving rise to an independent claim for relief."); <u>Airframe Sys., Inc. v. Raytheon Co.</u>, 520 F. Supp. 2d 258, 266-67 (D. Mass. 2007) (finding no res judicata for these reasons, given similar material facts); <u>Mgmt. Action Programs, Inc. v. Global Leadership & Mgmt. Res., Inc.</u>, No. CV 04-8405, 2005 WL 5747582, at *5 (C.D. Cal. May 18, 2005) (same).

Again, the court emphasizes that although the issue of ownership of Jackson's intellectual property was involved as an allegation in the 2004 lawsuit, it was never litigated or decided. Accordingly, to apply res judicata here would effectively grant ongoing ownership rights to Defendants simply because Plaintiffs stopped pursuing a certain set of infringement claims. See <u>Airframe Sys., Inc.</u>, 520 F. Supp. 2d at 266 (noting that a finding of claim preclusion under similar circumstances "would amount to a forced perpetual license with regard to the use of the illegally

---

[2] This analysis applies equally to all of the claims that Defendants argue are barred by res judicata, including Plaintiffs' misappropriation of likeness, cybersquatting, cyber piracy, and injunctive and declaratory relief claims.

10

upgraded software"). But this does not mean that the dismissal with prejudice of Plaintiffs' 2004 lawsuit has no significance. As Plaintiffs concede, the judgment eliminates Defendants' liability and Plaintiffs' ability to obtain any relief for past misconduct giving rise to that action.

**D. False Designation of Origin**

Defendants also separately challenge Plaintiffs' request for summary judgment on their claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). In the Ninth Circuit, "a celebrity may assert an unfair competition claim where the defendant uses the celebrity's persona without permission to suggest false endorsement or association." Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc., 688 F. Supp. 2d 1148, 1166 (D. Nev. 2010). The Ninth Circuit has set forth a number of factors that courts may consider in determining whether there is the required likelihood of confusion for such a claim:

1. the level of recognition that the plaintiff has among the segment of the society for whom the defendant's product is intended;

2. the relatedness of the fame or success of the plaintiff to the defendant's product;

3. the similarity of the likeness used by the defendant to the actual plaintiff;

4. evidence of actual confusion;

5. marketing channels used;

6. likely degree of purchaser care;

7. defendant's intent on selecting the plaintiff; and

8. likelihood of expansion of the product lines.

Downing v. Abercrombie & Fitch, 265 F.3d 994, 1007-08 (9th Cir. 2001). "These factors are not necessarily of equal importance nor

will all necessarily apply in every case." Fifty-Six Hope Road Music, 688 F. Supp. 2d at 1167 (citing Downing, 265 F.3d at 1008).

As Plaintiffs explain, many of these factors weigh strongly in their favor. It is undisputed that Jackson has "an almost unparalleled level of recognition among the public," based on his work as an artist, dancer, and entertainer. (Mot. at 20). Because Defendants sell products based entirely on Jackson and his success, this recognition is even greater among the intended consumers of these products. For the same reason, Defendants' products are wholly dependent on Jackson's fame. Nor is there any dispute that Defendants intentionally incorporated into their corporate logo a well-known likeness of Jackson performing one of his famous dance moves.

In response, Defendants argue only that: 1) Plaintiffs have not provided evidence of actual confusion; 2) there is no likelihood of confusion because Jackson is deceased; and 3) for a false endorsement claim, "a mark must be either registered or regularly used a brand identifier" by plaintiff. (Opp'n to Mot. at 18-20.) None of these arguments are persuasive. First, the court finds that the absence of evidence of actual confusion is not dispositive. As discussed, Plaintiffs have set forth convincing evidence as to a number of the other relevant factors, sufficiently establishing a high likelihood of confusion. Nor is it relevant to this analysis that Jackson is deceased and that his estate is therefore asserting his rights. See Bruce Lee Enters., LLC v. A.V.E.L.A., Inc., No. 10 Civ. 2333, 2011 WL 1327137, at *5 (S.D.N.Y. Mar. 31, 2011) ("Courts that have considered the issue have found that use of a deceased celebrity's persona can support a

12

false endorsement claim under the Lanham Act."). Finally, as other courts have held, a plaintiff "need not allege trademark rights in a particular image" or "identify its own specific goods or services that are similar to the [goods or services] at issue." Id.

Accordingly, the court finds that there is no genuine issue of material fact and that Plaintiffs are entitled to summary judgment on their Lanham Act claim for false designation of origin.

**E.   Other Claims**

As to Plaintiffs' remaining claims at issue in this Motion, Defendants raise no objection other than the res judicata defense discussed above. Having reviewed the evidence, the court finds that Plaintiffs are otherwise entitled to summary judgment on these claims. Specifically, because it is undisputed that Defendants have used Jackson's likeness in their corporate logo and advertisements without consent of Jackson's estate, Plaintiffs are entitled to summary judgment on their right of publicity claim under California Civil Code section 3344.1. Plaintiffs are also entitled to summary judgment on their cybersquatting and cyber piracy claims, pursuant to 15 U.S.C. § 1125(d) and California Business and Professions Code section 17525. There is undisputed evidence that Defendants intended in bad faith to profit from use of Jackson's name, by registering multiple domain names containing his name or the initials "MJ" to sell Jackson-related products. Plaintiffs are equally entitled to summary judgment on their claim for declaratory relief. There is a substantial controversy between the parties as to Jackson's intellectual property rights, but - as discussed above - there is no evidence that Defendants have obtained any of these rights.

Finally, the court finds that Plaintiffs are entitled to a permanent injunction against Defendants' continued unlawful conduct.  See eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006) (holding that the party seeking a permanent injunction must show: (1) an irreparable injury; (2) that legal damages are inadequate; (3) that the balance of hardships weigh in its favor; and (4) that the public interest would not be disserved by the injunction); Metro-Goldwyn Mayer Studios, Inc. v. Grokster, Ltd., 518 F. Supp. 2d 1197, 1214-23 (C.D. Cal. 2007) (discussing and applying these factors in a similar infringement context).  As Plaintiffs explain, and Defendants do not dispute, because Defendants' unauthorized use took place online, Plaintiffs are unable to identify the website visitors likely to have been confused by or who may have copied and redistributed the infringing material.  In addition, Defendants are unlikely to be able to pay damages, given their substantial outstanding debts.  In light of Defendants' past and present infringement, it is also undisputed that future violations are likely, causing ongoing harm to Plaintiffs and misled consumers.  Defendants, to the contrary, will not suffer any hardship from ceasing their unauthorized exploitation of Jackson's intellectual property.

**IV.  CONCLUSION**

For all of these reasons, the court grants Plaintiffs' Motion. Specifically, the court grants summary judgment to Plaintiffs as to each of Defendants' affirmative defenses.  The court also grants summary judgment to Plaintiffs on their claims for: 1) copyright infringement as to the "This Is It" key art, "Destiny" song, and "Thriller" material; 2) false designation of origin for Defendants'

14

Case 2:11-cv-00584-DDP-PJW   Document 132   Filed 08/10/12   Page 15 of 15   Page ID
 #:3171

use of Jackson's likeness performing the "Smooth Criminal Lean"; 3) misappropriation of likeness for Defendants' exploitation of this and other images of Jackson; 4) unfair competition based on this alleged unauthorized use; 5) cybersquatting and cyber piracy for Defendants' exploitation of Jackson's name in their domain names; 6) an accounting to reveal Defendants' profits from the unauthorized use; 7) a permanent injunction against the unauthorized use; and 8) declaratory relief as to ownership of the intellectual property at issue.  Finally, the court grants summary judgment to Plaintiffs against Defendant Vintage Associates LLC's declaratory relief counterclaim.

IT IS SO ORDERED.


Dated: August 10, 2012

DEAN D. PREGERSON
United States District Judge